# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John F. Grady | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 4609 | **DATE** | March 14, 2002 |
| **CASE TITLE** | American Specialty v. Chicago Metallic, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Defendant's motion to dismiss the complaint [38-1] is granted in part and denied in part. CMC's motion to dismiss the plaintiff's fraudulent misrepresentation claim (Count I) and breach of warranty claims (Counts III - V) is denied. CMC's motion to dismiss ASSI's negligent misrepresentation claim (Count II) is granted. See attached for details. Defendants are to answer the complaint by April 4, 2002. Status conference is set for May 15, 2002 at 11:00 a.m.
**ENTER MEMORANDUM OPINION.**

(11) X [For further detail see order (on reverse side of/attached to) the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | |
| | No notices required. | | | |
| X | Notices mailed by judge's staff. | | MAR 15 2002 | |
| | Notified counsel by telephone. | U.S. DISTRICT COURT CLERK | date docketed | 52 |
| | Docketing to mail notices. | | cm | |
| | Mail AO 450 form. | 02 MAR 14 PM 3:58 | docketing deputy initials | |
| | Copy to _____ | | | |
| | KAM | FILED-03-10 | date mailed notice | |
| | courtroom deputy's initials | Date/time received in central Clerk's Office | KAM mailing deputy initials | |

01-4609.021  March 14, 2002

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

AMERICAN SPECIALTY SYSTEMS, INC.

    Plaintiff,

v.  No. 01 C 4609

CHICAGO METALLIC CORP.,
ELDERSBURG BUILDING SUPPLY CO.
d/b/a SYSTEMS DISTRIBUTORS, and
ROCKY TOP MATERIALS, INC.

    Defendants.

DOCKETED
MAR 1 5 2002

## MEMORANDUM OPINION

Before the court is the motion of defendant Chicago Metallic Corporation to dismiss the complaint. For the reasons explained below, the motion is granted in part and denied in part.

## BACKGROUND

The following facts are drawn from the Amended Complaint and are taken as true for purposes of deciding this motion. In 1996, Fluor Daniel, Inc., a non-party to this case, contacted the plaintiff, American Specialty Systems, Inc. (ASSI), a Pennsylvania corporation located in York, Pennsylvania, and asked it to submit proposals for installing specialty wall and ceiling systems in several Frito-Lay food processing plants. To identify the

appropriate wall and ceiling systems to install in the Frito-Lay plants, ASSI contacted defendant Eldersburg Building Supply Company (Eldersburg) and Rocky Top Materials, Inc. (Rocky Top) and reviewed with them Frito-Lay's plant operations and requirements. Eldersburg and Rocky Top are distributors of a product manufactured by Chicago Metallic Corporation (CMC) known as the 730 All Stainless Steel Environmental Ceiling System (730 System). CMC is an Illinois corporation located in Chicago. The distributors advised the plaintiff that the 730 System was appropriate for use in the Frito-Lay plants. In addition, ASSI reviewed literature and specifications published by CMC, which stated that the 730 System is "all stainless steel," that it was designed for "food, drug, or chemical processors," and that high sanitary conditions could be maintained because the system could be "chemically cleaned." ASSI subsequently made several contracts to acquire the 730 System from the two distributors.

About one year after the product was installed in Frito-Lay's plants, Frito-Lay reported that a substance was peeling or flaking off the 730 System walls and ceilings. After investigating the problem, ASSI discovered that the substance flaking off the 730 System was a non-steel coating applied by CMC in the manufacturing process. ASSI incurred substantial expense to remove the coating from the walls and ceilings already in place at the Frito-Lay plants.

ASSI brought this lawsuit alleging fraudulent misrepresentation (Count I), negligent misrepresentation (Count II), and breach of express and implied warranties (Counts III-V) against CMC. The case was originally brought in the United States District Court for the Western District of Pennsylvania, but was transferred to this court pursuant to 28 U.S.C. § 1404(a) in May of 2001.[1]

CMC has moved to dismiss all counts asserted against it. As to Count I, it argues that ASSI has failed to plead fraud with particularity. CMC also argues that ASSI's negligent misrepresentation claim is barred by the economic loss doctrine. As to ASSI's claims for breach of express and implied warranties, CMC argues that the claims are not actionable because there is no privity between CMC and ASSI. In addition, CMC argues that the warranty claims are not actionable because ASSI failed to allege that it gave notice of the nonconforming goods to CMC within a "reasonable time."

## I. FRAUDULENT MISREPRESENTATION

CMC argues that ASSI failed to plead fraud with particularity in Count I of the complaint. See Federal R. Civ. Proc. 9(b). In

---

[1] On January 17, 2001, the plaintiff voluntarily dismissed Rocky Top as a defendant in this case.

response, ASSI amended the complaint to identify the alleged misrepresentations and attach copies of promotional materials that contain the alleged misrepresentations. See Amended Complaint, ¶¶ 8, 26 and Exs. A (promotional materials effective November 1, 1994) and B (promotional materials effective May 1, 1997); see also Petri v. Gatlin, 997 F. Supp. 956, 974 (N.D. Ill. 1997) (finding that plaintiffs satisfied Rule 9(b) where they quoted from and attached copies of the promotional materials containing the alleged misstatements). ASSI identifies the following statements from CMC's promotional materials as misrepresentations about the 730 System:

730 SYSTEM
ALL STAINLESS STEEL

....

- U.S.D.A. Approved. ...

- Designed for interior environments where high moisture levels and corrosive vapors may exist. For example food, drug, or chemical processors, laboratories, laundries, and marine environments.

- High sanitary conditions can be maintained because the system can be washed down or chemically cleaned.

See Amended Complaint, Exhibit A at 2, and Exhibit B, at 2.

CMC still contends, however, that the plaintiff has failed to plead fraud with particularity by failing to allege (1) how the statements constitute a "false statement of material fact," (2) that CMC knew the statement was false, (3) how CMC acted with intent to induce ASSI to purchase the 730 System, and (4) how

reliance on CMC's literature caused ASSI to suffer damage. These arguments do not withstand scrutiny. ASSI alleges that because the 730 System began flaking and peeling, the representations that it was "all stainless steel," suitable for use in a food processing plant, and suitable to withstand chemical cleanings, were all false. We agree. Moreover, these representations could certainly be material to ASSI's decision to acquire and install the 730 System for use in Frito-Lay's food processing plants. Amended Complaint at ¶ 26.

The plaintiff generally alleges that the defendant knew its representations about the 730 system were false and that they were made for the purpose of inducing the plaintiff and others to purchase the 730 System. Id. at ¶ 27. The plaintiff further alleges that it relied on these misrepresentations to submit proposals and to enter into contracts to provide the materials and labor required to install the 730 System in several Frito-Lay plants. Id. at ¶ 11. Finally, when the walls and ceilings started to peel and flake, the plaintiff allegedly incurred expenses in removing the coating. Id. at ¶¶ 16, 20-26.

The facts here are analogous to those in Petri v. Gaitlin, 997 F. Supp. 956, 974 (N.D. Ill. 1997), a case which also involved alleged misrepresentations made through promotional materials. There, we observed:

> Rule 9(b)'s requirements may be relaxed when specific details are within the defendant's exclusive knowledge

or control. Jepson, Inc. v. Makita Corp., 34 F.3d 1321, 1328 (7th Cir. 1994). The plaintiffs have alleged all of the details they reasonably could have been expected to allege--that the defendants distributed brochures containing misinformation to potential customers, see Amended Complaint ¶¶ 18-25, and that the plaintiffs received copies of the brochure prior to the time they entered into their contractual agreements with the defendants. See id. ¶¶ 26-27. The plaintiffs have attached a copy of the brochure to the complaint, see id. Exhibit B, and have specifically identified the statements in the brochures that are allegedly misleading.

. . .

This is not a case in which the plaintiffs' failure to provide additional specific details implicates the objectives of the rule. The plaintiffs' fraud allegations are neither cryptic nor confusing. ... The complaint is sufficiently particular to inform the defendants of the nature of the claims against them, and [the] defendants are entirely capable of drafting an adequate response. It is thus unlikely that Counts II and III are merely pretexts "to force a quick settlement or to allow discovery which may uncover unknown wrongs." Reshal Associates, Inc. v. Long Grove Trading Co., 754 F. Supp. 1226, 1232 (N.D. Ill. 1990).... To dismiss the plaintiffs' statutory fraud claims at this time would therefore be contrary to the general principle that Rule 9(b) must not be read blindly, but instead should be applied in order to effectuate the purposes of the rule. A.I. Credit Corp. v. Hartford Computer Group. Inc., 847 F.Supp. 588, 597 (N.D. Ill. 1994).

Petri, 997 F. Supp. at 974-75 (additional citations omitted).

Here, too, we find that the plaintiff has pled fraud with sufficient particularity.

CMC's motion to dismiss Count I is denied.

**II. NEGLIGENT MISREPRESENTATION**

CMC argues that the plaintiff's claim for negligent misrepresentation (Count II) is barred by the economic loss doctrine, which states that economic losses may not be recovered in tort (negligence or strict liability) absent physical injury or property damage. See Spivak v. Berks Ridge Corp., Inc., 586 A.2d 402, 405 (Pa. Super. Ct. 1990); Moorman Mfg. Co. v. National Tank Co., 435 N.E.2d 443, 448 (Ill. 1982).

In our order requiring the plaintiff to respond to CMC's motion, we noted that in Illinois there is an exception to the economic loss doctrine for negligent misrepresentation claims. See Tolan and Son, Inc. v. KLLM Architects, Inc., 719 N.E.2d 288, 291 (Ill. App. Ct. 1999). However, we questioned whether the plaintiff adequately alleged a claim for negligent misrepresentation under Illinois law. See Tolan, 719 N.E.2d at 294 (stating that the defendant must be "in the business of supplying information for the guidance of others in business transactions"). The plaintiff does not address this point in its response, contending instead that Pennsylvania law applies to its claim for negligent misrepresentation.

But unlike Illinois law, Pennsylvania law does not create an exception to the economic loss doctrine for claims of negligent misrepresentation, see Lennon v. Wyeth-Ayerst Labs., Inc., No. 1793 EDA 2000, 2001 WL 755944, *4 (Pa. Super. Ct. June 14, 2001), and the plaintiff has expressly alleged only economic losses.

Paragraph 25 of the Amended Complaint details the plaintiff's damages, which consist of (1) costs and expenses in developing a method to remove the clear coating; (2) actual and anticipated costs of removing the clear coating; (3) lost profits from jobs the plaintiff was unable to perform due the resources it diverted to remedy the situation at the Frito-Lay plants; and (4) loss of good will and damage to its reputation. Under either Pennsylvania or Illinois law, these are purely economic losses. See Serfecz v. Jewel Food Stores, Inc., No. 92 C 4171, 1998 WL 142427 at *2 (N.D. Ill. March 26, 1998) ("Economic loss includes, among other things, 'damages for inadequate value, costs of repair and replacement of the defective product, or consequent loss of profits ...' as well as the 'diminution in the value of the product because it is inferior in quality.'"); see also REM Coal Company Inc. v. Clark Equipment Co., 563 A.2d 128, 129, 133 (Pa. Super. Ct. 1989) (en banc) (holding tort recovery is not permitted where a defect in the product at issue caused damage to the product itself and consequential damages in the nature of costs of repair or replacement or lost profits, but the defect caused "no personal injury and no injury to any other property of the plaintiff").

ASSI argues that the economic loss doctrine does not bar its claim because the defendant's product caused damage to property. See 2-J Corp. v. Tice, 126 F.3d 539 (3rd Cir. 1997) (holding that

under Pennsylvania law, the economic loss doctrine bars tort recovery for damage to "the product" itself (warehouse), but not for damage to "other property" (inventory stored in the warehouse)). Without pointing to any specific allegations in the complaint, the plaintiff simply argues that "any contamination of the food products [resulting from the peeling and flaking of the 730 System] would constitute damage to 'other property.'" Plaintiff's Response, at 14. Moreover, "fasteners, frames and hangers required to install the defendant's ceiling system are also 'other property.'"

On a motion to dismiss, the plaintiff receives the "benefit of imagination so long as the hypotheses are consistent with the complaint." Sanjuan v. American Bd. of Psychiatry & Neurology, Inc., 40 F.3d 247, 251 (7th Cir. 1994). We do not believe it is reasonable to infer from the complaint that the plaintiff suffered any property damage due to the peeling or flaking of the 730 System. The complaint alleges that peeling and flaking put food at the Frito-Lay factory at risk of contamination. However, the complaint is crystal clear that Frito-Lay owned the food processing factory, not the plaintiff. Although the plaintiff argues that it "would be legally responsible" for any contamination of food products, that does not explain why this claim should escape application of the economic loss doctrine. The plaintiff has cited no case law to support its argument that

damage to someone else's property is a sufficient basis for allowing a negligence claim to recover the plaintiff's economic damages.

The complaint also provides no basis for inferring that the fasteners, frames, and hangers used to install the 730 System remained the property of ASSI after installation in the Frito-Lay plants. Even more fundamentally, however, there is no reasonable basis to infer that the flaking of the 730 System caused damage to these installation parts. Nor can we infer that the process of removing the clear coating caused damage to the fasteners, frames, and hangers: the complaint alleges that the plaintiff has been removing the clear coating by washing it off with a chemical solution that is safe enough to be used in food processing plants.

Therefore, even assuming arguendo that Pennsylvania law applies here, the plaintiff's claim for negligent misrepresentation against CMC must be dismissed.

### III. Breach of Express and Implied Warranties

CMC argues that Counts III, IV, and V, for breach of express and implied warranties, should be dismissed because there is no privity between the parties, as required by Illinois law. See Crest Container Corp. v. R.H. Bishop Co., 445 N.E.2d 19, 25 (Ill. App. Ct. 1982) (stating that privity is required). The plaintiff

responds that Pennsylvania provides the applicable law, and it has abolished a privity requirement in breach of warranty actions. See Moscatiello v. Pittsburgh Contractors Equip. Co., 595 A.2d 1198, 1203-04 (Pa. Super. Ct. 1991) ("The law of Pennsylvania is clear that, for recovery for breach of implied warranties, a party need not prove 'privity of contract'").

This action was commenced in the United States District Court for the Western District of Pennsylvania, but transferred to this court pursuant to 28 U.S.C. § 1404(a). The parties agree that we must apply Pennsylvania's choice of law rules to determine which state's substantive law governs this case. See Van Dusen v. Barrack, 376 U.S. 612, 639 (1964) (holding that the transferee district court must apply the state law that would have been applied if there had been no change of venue under Section 1404(a)). In determining what law governs actions for breach of warranty, Pennsylvania courts apply the requirements of the Uniform Commercial Code (UCC) as those requirements have been interpreted by the Pennsylvania Supreme Court. See, e.g., Tucker v. Capitol Mach., Inc., 307 F. Supp. 291, 294 (M.D. Pa. 1969) (citing Griffith v. United Airlines, Inc., 203 A.2d 796, 805 & n. 17 (Pa. 1964)). Absent agreement of the parties, the Pennsylvania UCC `applies to transactions bearing an "appropriate relation" to the Commonwealth of Pennsylvania. 13 Pa. Cons. Stat. Ann. § 1105

(West 2002).[2]

CMC argues that the plaintiff should be bound to the forum selection clause contained in CMC's General Conditions of Sale, which states that

> These Conditions shall be governed by and interpreted in accordance with the laws of the State of Illinois United States of America, and all disputes hereunder that cannot be amicably resolved by the parties thereto must be settled in a court of competent jurisdiction within the State of Illinois, United States of America.

CMC's Motion to Dismiss, Ex. 2-A. The problem with this argument is that the plaintiff was not a party to any contract with CMC and did not agree to the forum selection clause in CMC's General Conditions of Sale. Indeed, CMC itself argues that the plaintiff's breach of warranty claims should be dismissed because the plaintiff was not in privity with CMC.

> Section 1105(a) allows contracting parties to choose the law applicable to "_their_" relationship. The statute is silent, however, on the issue of whether parties may also make choice of law decisions that impact the rights of third parties who have not signed on to their contract. Fundamental principals of contract law, including most notably the rules governing offer and acceptance, strongly militate that they cannot. See Perry v. Tioga County, 694 A.2d 1176, 1178 (Pa. [Commw.] Ct. 1997) (offer and acceptance necessary elements of an enforceable agreement). A third party, that is, cannot have his rights altered, compromised or

---

[2] Except as otherwise provided in this section, when a transaction bears a reasonable relation to this Commonwealth and also to another state or nation the parties may agree that the law either of this Commonwealth or of such other state or nation shall govern their rights and duties. Failing such agreement this title applies to transactions bearing an appropriate relation to this Commonwealth.

13 Pa. Cons. Stat. Ann. § 1105 (West 2002).

-13-

redefined by the provisions of a contract he has not accepted. See Hahnemann Medical College and Hospital of Philadelphia v. Hubbard, 267 Pa. Super. 436, 440, 406 A.2d 1120, 1122 (1979) (contract not binding without offer and acceptance).

In re. Eagle Enter., 223 B.R. 290 (E.D. Pa. 1998), aff'd, 237 B.R. 269 (E.D. Pa. 1999) (emphasis in original). Therefore, CMC's forum selection clause cannot be applied against the plaintiff.[3/]

Thus, we turn to section 1105, which asks whether the transaction at issue bears an "appropriate relation" to Pennsylvania. There is some confusion as to what this standard means and how to apply it. Some courts suggest the "appropriate relation" standard may require a lesser showing than Pennsylvania's common law choice of law principles, see Philadelphia Factors Inc. v. Gordon, No. 98-3578, 1999 WL 225866 at *3 & n.4 (E.D. Pa. April 16, 1999); RX Returns, Inc. v. PDI Enter., Inc., No. 97-1855, 1997 WL 330360, at *5 & n.5 (E.D. Pa. June 6, 1997), while other courts simply merge the two together, suggesting that the meaning of "appropriate relation" is informed by Pennsylvania's traditional choice-of-law principles. See, e.g. Atlantic Paper Box Co. v. Whitman's Chocolates, 844 F. Supp. 1038, 1041-42 (E.D. Pa. 1994); Tucker, 307 F. Supp. at 294. Because all of these cases ultimately relied on Pennsylvania's

---

[3/] In addition, the General Conditions of Sale applies, by its very terms, only to the "purchaser" and "seller." The seller is defined as CMC, and the purchaser is defined as "the party ordering or purchasing products ('products') from seller." According to the Amended Complaint, the plaintiff did not purchase any products from CMC; it purchased the 730 System from distributors.

choice of law rules, we will also analyze section 1105 by reference to Pennsylvania's traditional choice of law rules.

There are two related inquiries: which state has the greatest interest in applying its law, and which state has the most contacts with the transaction. Armstrong Cork Co. v. Drott Mfg. Co., 433 F. Supp. 413, 415 (E.D. Pa. 1977) (discussing what law to apply in claims based on strict liability and breach of warranty). Pennsylvania is clearly an interested jurisdiction because its rule eliminating the privity requirement in breach of warranty cases is intended to protect Pennsylvania purchasers from remote manufacturers, and applying that rule here would further Pennsylvania's policy. Illinois is also an interested jurisdiction because its privity rule protects Illinois manufacturers, and applying the rule in this case would arguably further that policy.[4] In actions for breach of contract, the following contacts are considered in determining the proper choice of law: "the places of negotiation, contracting and performance, the location of the subject matter of the contract,

---

[4] On the other hand, to the extent this case falls within an exception to the privity requirement under Illinois law, as the plaintiff argues, Illinois' interest in the application of its law would be greatly diminished. The exception to the privity requirement applies where the manufacturer knows "the identity, purpose and requirements of the dealer's customer and manufactured or delivered the goods specifically to meet those requirements." See Crest, 445 N.E.2d at 25. Without expressing an opinion as to whether or not this exception applies in this case, we note that ASSI alleged in its Response that CMC generally knew the type of use its product would be put to, but ASSI has made no allegation that CMC had any specific knowledge about how the product would be used in the Frito-Lay factories. It is unclear whether the exception to the privity requirement would apply to such a case.

and the citizenship of the parties." <u>Altronics of Bethlehem, Inc. v. Repco, Inc.</u>, No. 89-4918, 1991 WL 133518 at *9 (E.D. Pa. July, 15, 1991) (discussing a claim for breach of contract and breach of warranties).

ASSI contracted to buy the 730 Systems from two distributors and to install the 730 Systems in Frito-Lay plants located in numerous places, including: Louisville, Kentucky; Aberdeen, Maryland; Denver, Colorado; Fayetteville, Tennessee; Jonesboro, Arkansas; and Cambridge, Ontario (Canada). ASSI obtained all but one of the 730 Systems it needed from distributor Eldersburg; the other it obtained from Rocky Top. Although Eldersburg is a Maryland corporation, it has an office in Pennsylvania, and plaintiff met with representatives of Eldersburg in Pennsylvania. All of the plaintiff's orders to Eldersburg for the 730 System were sent to Eldersburg's Pennsylvania office, and Eldersburg sent all of its acceptances to an ASSI office in Pennsylvania. With one exception, Eldersburg delivered the 730 Systems to ASSI's shop in York, Pennsylvania. (The exception was Jonesboro, Arkansas, where Eldersburg had the 730 System delivered directly from CMC.) As to ASSI's contract with Rocky Top, the Tennessee distributor had the product shipped from CMC directly to the Fayetteville, Tennessee job site.

On the other hand, CMC argues that it is an Illinois corporation, that the 730 System was manufactured in Illinois,

and that CMC had no contact with the plaintiff in Pennsylvania. None of its contracts with the distributors were negotiated or consummated in Pennsylvania.

The case presenting circumstances most analogous to ours is Armstrong Cork Co. v. Drott Mfg. Co., 433 F. Supp. 413, 418 (E.D. Pa. 1977). There, the plaintiff was a Pennsylvania corporation that purchased a logger to use in its logging operations in Georgia. The Georgia distributor (a non-party to the case) acquired the logger from a Wisconsin manufacturer that shipped the logger from Wisconsin directly to Georgia. Once in Georgia, the logger was used, serviced, and subsequently damaged by fire. The plaintiff sued the Wisconsin manufacturer for breach of implied warranties. The manufacturer argued that Georgia law requires privity in such suits and moved for summary judgment on the basis that there was no privity between the plaintiff and the manufacturer. The court identified the relevant transaction at issue as the contract between the non-party distributor and the plaintiff, id. at 418, not the contract between the manufacturer and the distributor. The contract between the plaintiff and the distributor was negotiated and consummated in Georgia, and Georgia sales tax was paid. Id. In addition, delivery of the logger was made in Georgia, and warranty repairs and service were performed in Georgia. Id. Although the purchase was approved and the check to the distributor was drawn in Pennsylvania, these

contacts were characterized as merely "collateral," and the court concluded that Georgia law applied. Id.

We conclude that with respect to the plaintiff's transactions with Eldersburg, Pennsylvania has the most significant contacts, as it was the place of negotiation, offer and acceptance, and with one exception, delivery. Even though the products were ultimately installed in factories outside of Pennsylvania, it does appear that the transactions were centered in Pennsylvania. See id. On the other hand, Tennessee likely has more contacts with the transaction between the plaintiff and Rocky Top, inasmuch as the contract appears to have been negotiated partially in Tennessee, delivery was made directly to Tennessee, and the product was installed in a Tennessee factory. See id. In any event, Illinois' only contact with the relevant transaction is that the product was manufactured in Illinois by an Illinois citizen. That alone cannot be sufficient to overcome Pennsylvania's much stronger contacts. See Altronics, 1991 WL 133518 at *9 (applying Pennsylvania law in breach of contract and warranty case even though the defendant was a Florida citizen and produced in Florida the product at issue).

Therefore, we hold that Pennsylvania law applies and deny the motion to dismiss Counts III-V for lack privity.

CMC's remaining arguments for dismissing the breach of warranty claims must also fail. First, CMC argues that ASSI

should be bound by the warranty limitation provision stated in CMC's General Conditions of Sale. As noted previously, however, ASSI cannot be bound to the General Conditions of Sale because it was not a party to the contract between CMC and its distributors. See infra pp. 12-13 & note 3. Finally, CMC contends that section 2607 of the Pennsylvania UCC requires a buyer of non-conforming goods to give the seller notice "within a reasonable time after he discovers or should have discovered any breach." 13 Pa. Cons. Stat. § 2607(c)(1) (West 2002). CMC argues that the breach of warranty claims must be dismissed because the plaintiff failed to allege that it gave CMC notice of the alleged defect "within a reasonable time" after discovering it. The complaint alleges that ASSI was not told about the clear coating and could not have discovered it by visual inspection. Amended Complaint, at ¶ 19. The plaintiff further alleges that it contacted the defendants "upon discovering" that a clear coating had been applied to the 730 System, and that it requested CMC's help in devising a solution to the peeling and flaking problem. Id. ¶ 17. The plaintiff is not required to parrot the language of the UCC; the allegations in the complaint are sufficient to meet the liberal pleading requirements of Federal Rule of Civil Procedure 8(a).

## **CONCLUSION**

CMC's motion to dismiss the plaintiff's fraudulent

misrepresentation claim (Count I) and breach of warranty claims (Counts III - V) is denied. CMC's motion to dismiss ASSI's negligent misrepresentation claim (Count II) is granted.

DATE:     March 14, 2002

ENTER:    _____
          John F. Grady, United States District Judge